UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL L. WILSON,

    Plaintiff,

-vs-                                                          Case No. 10-13828
                                                            HON. AVERN COHN

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

**<u>MEMORANDUM AND ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

### I. Introduction

This is a social security case. Plaintiff Patrick L. Wilson (Wilson) appeals from the final decision of the Commissioner of Social Security (Commissioner) denying his application for disability benefits. Wilson claims disability since April 10, 2005.

The parties filed cross motions for summary judgment which were referred to the Magistrate Judge (MJ) for a report and recommendation (MJRR). The MJ recommended that Wilson's motion for summary judgment be denied, that the Commissioner's motion for summary judgment be granted, and that the findings of the Commissioner be upheld. Wilson filed a timely objection to the MJRR. For the reasons that follow, the Court will adopt the MJRR and the case will be dismissed.

### II. Background

#### A.

The MJRR sets forth the facts which are summarized here. On May 19, 2005,

Wilson filed a Title II application for a period of disability insurance benefits and a Title XVI application for SSI due to back pain, knee pain, and learning disabilities.

On Dec. 28, 2005, the Commissioner denied the claims. Wilson then requested review before an Administrative Law Judge (ALJ). After conducting a hearing, the ALJ issued a decision on Aug. 13, 2008, consistent with previous agency determinations. At step two of the five-step sequential analysis prescribed by 20 C.F.R. § 404.1520 (1997) for evaluating disability, the ALJ found that medical evidence established the "severe" impairments of degenerative arthritis of bilateral knees, mild degenerative joint disease of the cervical spine at C4-C5, degenerative changes of the lumbar spine with disc space narrowing at L4-L5 and L5-S1, situational depression, personality disorder, history of substance abuse, and chronic headaches. (Doc. 9-26). At step three, the ALJ found no evidence that Wilson's combination of impairments met or equaled one of the listings in the regulations. (Doc. 9-27).

At step four, the ALJ determined that despite his impairments, Wilson retained the Residual Functional Capacity (RFC) to "perform a range of unskilled sedentary work" with the following restrictions:

> (1) lifting and carrying weights occasionally, defined as up to 1/3rd of the work-day, up to five pounds of weight; (2) lift and carry weights frequently, defined as up to 2/3rds of the work-day, up to five pounds of weight; (3) stand or walk in the workplace, assuming normal periods of breaks, for total of up to two hours during a normal 8-hour work day; (4) engage in the sitting position, in a work setting, assuming normal breaks, for total of six hours during a normal 8-hour work day; (5) eliminate jobs that would require frequent bending from the waist or knees; eliminate jobs that would have extremes of cold or heat, extremes of wetness and/or humidity; (7) can communicate in the English language; (8) can understand and perform simple unskilled work instructions; (9) eliminate jobs that would have hazards in the work-setting, such as unprotected areas of moving machinery, heights, ramps, ladders, scaffolding and unprotected regions of holes and

pits.

In addition, claimant has the mental functional abilities to respond appropriately to supervision when performing unskilled work activity; respond appropriately in the performance of usual work situations; respond appropriately to co-workers when performing unskilled work activity; and capable of dealing with changes in a routine work setting.

(Doc. 9-29).

The ALJ further determined that the RFC precluded Wilson from performing his past relevant work in garbage pick-up because it is "an unskilled job requiring heavy exertional activity." (Doc. 9-25).

At step five, after consulting with a vocational expert (VE), the ALJ found that Wilson could perform the duties of a bench work assembler (3000 local jobs), information clerk (1000 local jobs), and plastic sorter (1500 local jobs). As such, although Wilson's claim survived the requirements of the first four steps, it did not meet the requirements of step five, as there are jobs other than his past relevant work that exist in significant numbers in the national economy and which can accommodate his RFC. Accordingly, the ALJ determined that Wilson was not disabled for purposes of the Act and denied Wilson's application for benefits. (Doc. 9-35).

Wilson subsequently appealed the ALJ's decision. On July 29, 2010, the Appeals Council (AC) denied his request for review and the ALJ's decision became the final decision of the Commissioner. Wilson brought this action seeking judicial review. The MJ rejected Wilson's arguments, finding them to be without merit.

B.

Wilson now objects to the MJRR on four grounds. He argues that: (1) the RFC is incomplete and not supported by substantial evidence; (2) the ALJ made an erroneous

pits.

> In addition, claimant has the mental functional abilities to respond appropriately to supervision when performing unskilled work activity; respond appropriately in the performance of usual work situations; respond appropriately to co-workers when performing unskilled work activity; and capable of dealing with changes in a routine work setting.

(Doc. 9-29).

The ALJ further determined that the RFC precluded Wilson from performing his past relevant work in garbage pick-up because it is "an unskilled job requiring heavy exertional activity." (Doc. 9-25).

At step five, after consulting with a vocational expert (VE), the ALJ found that Wilson could perform the duties of a bench work assembler (3000 local jobs), information clerk (1000 local jobs), and plastic sorter (1500 local jobs). As such, although Wilson's claim survived the requirements of the first four steps, it did not meet the requirements of step five, as there are jobs other than his past relevant work that exist in significant numbers in the national economy and which can accommodate his RFC. Accordingly, the ALJ determined that Wilson was not disabled for purposes of the Act and denied Wilson's application for benefits. (Doc. 9-35).

Wilson subsequently appealed the ALJ's decision. On July 29, 2010, the Appeals Council (AC) denied his request for review and the ALJ's decision became the final decision of the Commissioner. Wilson brought this action seeking judicial review. The MJ rejected Wilson's arguments, finding them to be without merit.

B.

Wilson now objects to the MJRR on four grounds. He argues that: (1) the RFC is incomplete and not supported by substantial evidence; (2) the ALJ made an erroneous

credibility determination; (3) the ALJ made an erroneous step five determination; and (4) remand is merited in order to submit new and material evidence. Accordingly, Wilson argues that the MJ's decision should be reversed or remanded.

### III. Standard of Review

The district court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997). It is limited to determining whether "the commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." Id. In deciding whether to affirm the Commissioner's decision, it is not necessary that the court agree with the Commissioner's finding, only that it is substantially supported in the record. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir.1999). The substantial evidence standard "presupposes that there is a zone of choice within which the decision-makers can go either way, without interference from the courts." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Substantial evidence is defined as more than a scintilla of evidence but less than preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 249 (6th Cir. 2007); Social Security Act, § 205(g); 42 U.S.C.A. § 405(g).

A reviewing court may not resolve conflicts in the evidence or decide questions of credibility. Brainard v. Sec'y of HHS, 889 F.2d 679, 681 (6th Cir. 1989). The determinations of reviewing courts should be made based upon the record in its entirety. Rogers, 486 F.3d at 249. The portions of the MJRR that the claimant finds objectionable

are reviewed de novo. Smith v. Detroit Fed'n of Teachers, Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987); 28 U.S.C. § 636(b)(1)(c).

## IV. Discussion

As stated, Wilson raises four objections to the MJRR as follows.

### A. RFC Finding

Wilson claims that there are several errors with the RFC, in which the ALJ describes that Wilson is able to engage in a limited range of unskilled sedentary work.

#### 1. Concentration, Persistence, and Pace

First, Wilson says that the ALJ's hypothetical to the VE failed to accurately portray Wilson's limitations. Particularly, he says that it was based on inaccurate information with regard to his deficiencies in concentration, persistent, and pace. Further, Wilson contends that there is a contradiction between what the ALJ described as "moderately limited" in concentration and "unskilled work." In response, the Commissioner explains that the PRT and MRFC only offer a checkbox thus the ALJ has to find a way to "translate" the check-box option into meaningful evidence for the VE, which she says she did here.

The law provides that "substantial evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question but only if the question accurately portrays [plaintiff's] individual physical and mental impairments." Varley v. Sec'y of HHS, 820 F.2d 777, 779 (6th Cir. 1987) (citations omitted). This does not, however, mean that the ALJ has to list all of the plaintiff's impairments to the VE. Rather, in order to be reliable, the VE has to have enough information that he/she can take all of the plaintiff's limitation into account. Webb v. Comm'r of Soc Sec., 368 F.3d 629, 633 (6th Cir. 2004).

Further, the Sixth Circuit has recognized that an individual with a moderate limitation in concentration, persistence, and pace may be able to perform simple, repetitive work. White v. Comm'r of Soc. Sec., 572 F.3d 272, 280, 288 (6th Cir. 2009) (finding that a hypothetical which described that a claimant "need[ed] simple repetitive work or [sic] because of a moderate limitation in the ability to maintain attention and concentration due to mental impairments" was an accurate representation and not error by the ALJ). See also Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001) ("the ALJ relied on the testimony of four physicians who characterized [the claimant's] concentration problems as minimal or negligible. The ALJ then translated [the claimant's] condition into the only concrete restrictions available to him . . . and duly incorporated them into his hypothetical to the [VE]").

Here, Wilson's counsel asked the VE whether there would be jobs available if "due to the cumulative effect of pain and lack of sleep, our hypothetical claimant would be unable to concentrate for an eight-hour period, and may have occasional unscheduled naps." (Doc. 9-10, p. 21). The VE answered that there would no jobs available for such a person. (Id.).

However, the ALJ described Wilson's limitations as follows:

> [C]laimant has the mental functional abilities to respond appropriately to supervision when performing unskilled work activity; respond appropriately in the performance of usual work situations; respond appropriately to co-workers when performing unskilled work activity; and capable of dealing with changes in a routine work setting.

(Doc. 9-34).

This description was based on the following medical evidence. First, Dr. Leonard reported in the Psychiatric Review technique (PRT) that Wilson's ability to remember and

6

carry out detailed instructions and maintain concentration is "moderately limited" (Docs. 9-2, pp. 37, 39). Similarly, in the Mental Residual Functional Capacity Assessment (MRFC), Dr. Leonard again reported that Wilson's ability to maintain attention and concentration for extended periods is "moderately limited." (Doc. 9-2, p. 41). He concluded, however, that "despite these limitations, he is able to perform unskilled work." (Doc. 9-2, p. 43).

Based on the above, the ALJ's hypothetical is supported by substantial evidence. Accordingly, Wilson's objection is over-ruled.

## 2. GAF Score

Next, Wilson says that the ALJ erred on the ground that Wilson's Global Assessment of Functioning (GAF) score of 50 should have been given greater weight in the determination of his RFC.[1] In response, the Commissioner says that in the past the Commissioner and the Sixth Circuit have not given significant weight to GAF scores; therefore, the fact that the ALJ did not rely on Wilson's GAF scores does not undermine the ALJ's substantial evidence finding. The Court agrees.

In <u>Kennedy v. Astrue</u>, 247 F. App'x 761, 766 (6th Cir. 2007), the court of appeals found an increase in GAF score from 55 to 60 to be insignificant because GAF scores are not raw medical data and do not, in and of themselves, show improvement or decline. Further, the Sixth Circuit has held that GAF scores, standing alone, do not make an RFC

---

[1] "GAF examinations measure psychological, social and occupational functioning on a continuum of mental-health status from 0-100 with lower scores indicating more severe mental limitations. [...] A GAF of 41-50 means that the patient has serious symptoms ...OR any serious impairment in school, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF rating of 51-60 signals the existence of moderate difficulty in social or occupational functioning." <u>Edwards v. Barnhart</u>, 383 F. Supp. 2d 920, 924 n. 1 (E.D. Mich. 2005) (citations omitted).

7

determination inaccurate. Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002).

Here, the ALJ was not bound to rely on the GAF score alone in making his RFC determination. See Howard, supra. As such, Wilson's argument lacks merit.

### 3. Lay Opinion

Wilson's final RFC argument asserts that the RFC is flawed because it is based on the ALJ's lay opinion. However, Wilson fails to set forth any evidence that the ALJ made his decision based on his own lay opinion or that he attempted to play doctor. Rather, the record demonstrates that the ALJ made a credibility finding, as will be discussed below, which is based on substantial evidence and is entitled to great weight. Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 542 (6th Cir. 2007) ("ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility' . . . [h]owever, they must also be supported by substantial evidence") (internal citation omitted). Thus, Wilson's argument lacks merit.

### B. Credibility Determination

Wilson next objects to the ALJ's finding that Wilson's complaints were not fully credible and that despite his impairments he was capable of performing a limited range of sedentary work. In response, the Commissioner says that the ALJ's credibility finding is supported by substantial evidence. The Court agrees.

As stated, the reviewing court is to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which the court does not, of observing a witness's demeanor while testifying. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). Here, Wilson has alleged excruciating pain in his

knees and back. Dr. Punitha Vijayakumar, Wilson's neurologist, was unable to find the etiology for Wilson's pain because none of the tests administered explained it. (Doc. 9-3, pp. 19). He, therefore, refused to prescribe any more pain medication. (Id. at 20). Dr. Bray, a psychologist, reported that "there is no objective evidence to correspond to his objective complaints of back pain." (Doc. 9-1, p. 30). Dr. Bray observed that although Wilson alleged that he needed a cane for ambulation he did not use it at the interview and carried it when he walked out. (Id.). Additionally, although Wilson alleged that he cannot sit for long periods of time without experiencing pain, he nonetheless sat through the interview without difficulty and made only mild postural changes. (Id.). These inconsistencies convinced Dr. Bray that Wilson was manipulating the contents of the evaluation for his own benefit. (Id.).

Further, an examiner stated that "[Wilson] tends to exaggerate his symptomatology" and that "his statements were not grounded in reality." (Doc. 9-1, p. 29). Finally, Dr. Mills, a psychologist, reported in 2005 that Wilson was "trying to exaggerate his symptoms" and "was clearly putting on an act for his examiner's benefit." (Doc. 9-2, p. 4).

In sum, the ALJ's decision to give less weight to Wilson's testimony is supported by the medical evidence on the record. Additionally, consistent with SSRs 96-4p and 96-7p, the record demonstrates that the ALJ considered Wilson's subjective complaints and as well the combination of his impairments. (Doc. 9-29). As such, the claim that the ALJ's credibility finding is erroneous lacks merit.

C. Step Five Determination

Wilson next contends that the ALJ erred in the step 5 analysis because at the administrative hearing, the VE's testimony as to available occupations for Wilson conflicted with occupations listed the Dictionary of Occupational Titles (DOT). Particularly, Wilson says that he is entitled to remand because the VE did not state the numeric DOT codes assigned to the occupations available to Wilson, and because all but one of the occupations are described in the DOT as requiring higher exertion and skill levels than Wilson's sedentary and unskilled levels.[2] In response, the Commissioner maintains that because the VE's testimony accurately described one available position for Wilson, the step five requirements are satisfied.

"[An] ALJ and [VE] are not bound by the [DOT] in making disability determinations because the Social Security Regulations do not obligate them to rely on the [DOT's] classifications." Wright v. Massanari, 321 F.3d 611, 616 (6th Cir. 2003) (holding that ALJ did not err in evaluating the testimony of a VE when the VE testified that skilled occupations were available to an unskilled claimant). Further, an ALJ "may rely on the testimony of [a VE] even if it is inconsistent with the job description set forth in the [DOT]." Conn v. Sec'y of HHS, 51 F.3d 607 610 (6th Cir. 1995).

Here, the ALJ asked the VE whether her testimony was consistent with the DOT to which the VE replied that there was no conflict. (Doc. 9-10, p. 20). The VE then testified

---

[2] Wilson also argues error because one of the available occupations described by the VE, the information clerk, has not been updated in the DOT since 1977 and thus suggesting that the ALJ should not have relied on a position that no longer exists. While troubling that such an occupation was suggested by the VE, Wilson fails to provide any authority for the proposition that an occupation which has not been updated in the DOT is a basis for remand. Thus, the argument lacks merit.

that Wilson qualified for four jobs, and stated that all were sedentary and unskilled: information clerk, surveillance system monitor, bench assembler, and plastics sorter." (Doc. 9-10, pp. 19-20). However, as stated, the VE failed to provide the numeric codes associated with the positions. Further, two of the occupations, bench assembler and plastics sorter, conflict with the DOT in that the DOT states that both are light rather than sedentary work and plastics sorter is semi-skilled work rather than light.

Even with the inconsistencies and the failure to provide the DOT codes, the ALJ was within his rights to rely on the VE's testimony because the Social Security regulations do not require the VE to rely on classifications in the DOT. See Conn, supra, at 610. Moreover, "[n]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct." Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374 (6th Cir. 2006). Thus, Wilson is not entitled to remand on this ground.

## D. Additional Evidence

Wilson's final argument is that he is entitled to remand, under § 405(g) of the Social Security Regulations, in order for 245 pages of additional evidence to be submitted for consideration as to his disability status.

In order to succeed on a § 405(g) motion for remand, a claimant must be able show that (1) the evidence is new evidence; (2) the evidence is material to the case; and (3) there was good cause for failure to present it earlier. Melkonyan v. Sullivan, 501 U.S. 89, 100-01 (1991). This means that the new evidence must be noncumulative. Ward v. Comm'r of Soc. Sec., 72 F.3d 131 (6th Cir. 1995). It must additionally be probative of the claimant's

11

condition for the time period for which benefits were denied. Melkonyan, supra, at 100-01. And it must have a reasonable possibility of affecting the outcome of the administrative proceeding. "Material evidence is evidence that would likely change the Commissioner's decision." Sizemore v. Sec'y of HHS, 865 F.2d 709, 711 (6th Cir.1988).

The evidence that Wilson submits for review on remand include:

> (1) Records from Hawthorne Psychiatric Hospital dated 1981-82, (Doc. 9-5, pp. 13-18);
>
> (2) physical therapy records dated Oct. 9 - 30, 2007, (Doc. 9-8, pp. 23-32);
>
> (3) treatment notes from Dr. Crawford regarding knee pain dated Oct. 30, 2007 – Oct. 22, 2009;[3]
>
> (4) treatment at Oakwood Hospital for knee and back dated Sept. 20, 2008 – Sept. 9, 2009;[4]
>
> (5) left knee arthoscopy because of degenerative joint disease in left knee dated May 5, 2008, (Doc. 9-8, pp. 13-14);
>
> (6) records from Insight Recovery Center outpatient psychiatric facility dated July 17, 2008 – Oct. 21, 2008, (Doc. 9-5, pp. 46 – 50; Doc. 9-6, pp. 1-9);
>
> (7) revision of right knee asthroplasty because of instability dated Aug. 8 -11 2008, (Doc. 9-7, pp. 46-50; Doc. 9-8, pp. 1-3);
>
> (8) MRI showing mild to moderate narrowing at L4-S1 dated April 9, 2009, (Doc. 9-5, pp. 43-44); and
>
> (9) records from inpatient stay at psychiatric hospital Behavioral Center of Michigan which was due to suicidal

---

[3] (See Doc. 15, pp. 2-3, for multiple records citations describing knee pain).

[4] (See id., for multiple record citations describing knee and back pain).

>ideation, and feeling of hopelessness and helplessness dated July 11-15, 2009, (Doc. 9-6, pp. 11-50; Doc. 9-7, pp. 1- 21).

Particularly, the evidence falls into two broad categories: records that pre-date the administrative proceedings which concluded on August 13, 2008, and records which are dated after the administrative proceedings: records (1)-(7) fall into the former category; records (8)-(9) fall into the latter.

### 1. Records That Pre-Date the Administrative Proceedings

As to records (1)-(7), they are dated before or during the administrative proceedings and are therefore not new. Additionally, Wilson has failed to show good cause for not submitting them earlier or requesting that the ALJ keep the record open.

Even so, Wilson claims that the 1981-1982 records, although not new, should still be eligible for remand because they were previously unavailable to him. He claims that the remaining documents are new, material, and outcome determinative. The Commissioner maintains that Wilson failed to meet his burden because the evidence at issue is not new, not material, and Wilson fails to provide good cause for failing to failing to submit it earlier. The Commissioner is correct.

First, record (1), the psychiatric records from 1981-1982, is not new. Additionally, the explanation given by Wilson—namely, that he was unable to obtain the records earlier—is unpersuasive. "Unavailability" alone does not suffice as an explanation. See Sutton v. Comm'r of Soc. Sec., 2009 WL 3126310, *22 (E.D. Mich. 2009) ("Plaintiff has not shown good cause for failing to produce this information, Plaintiff merely argues that it was 'unavailable' to him."). Further, even if Wilson had shown good cause, record (1) would fail

the materiality standard due to the fact that the psychiatric records describe what occurred to Wilson when he was a child, which is beyond the scope of his request for social security benefits.

Accordingly, because Wilson lacks good cause for records (1)-(7), Wilson has failed to meet his burden. See Bass v. McMahon, 499 F.3d 506, 513 (6th Cir. 2007) ("The lack of good cause for incorporating this evidence in the record is the simplest reason why the standard for remand is not met.").

### 2. Records That Are Dated After the ALJ Hearing

Record (8), an April, 2009, MRI, involves evidence after the ALJ hearing thus it is considered new. However, new evidence is not considered material if it concerns the deterioration of an existing condition. Particularly, evidence of the deterioration of a condition that occurred after the ALJ's decision is not a basis for remand. Wyatt v. Sec'y of HHS, 974 F.2d 680, 685 (6th Cir. 1992) ("Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial") (internal citation omitted). Thus, remand is not warranted for record (8).

Record (9), a four-day stay at a psychiatric hospital, (Doc. 9-6, p. 10 – Doc. 9-7, p. 21), is new because it occurred after the administrative proceedings. Additionally, because record (9) concerns a sudden in-patient hospital stay at a psychiatric center, Wilson could not have predicted that this would occur and he could not have scheduled it earlier. Thus, Wilson has demonstrated good cause.

Further, record (9) arguably meets the probative and materiality prongs because it involves Wilson's psychological and mental impairments at the time that the benefits were denied. Indeed, the record demonstrates that psychiatrists and examiners have found

evidence of depression (Doc. 9-2, pp. 30, 39, 43); bipolar disorder (Doc. 9-1, pp. 40-41); a personality disorder (Doc. 9-1, p. 41; Doc. 9-2, p. 34); and a polysubstance dependence disorder (Doc. 9-2, pp. 39, 43).

However, the Sixth Circuit has held that evidence is "material and probative when there is a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." Johnson v. Heckler, 765 F.2d 145, 1985 WL 13306, *1 (6th Cir. 1985). Particularly, in Johnson, the claimant requested a remand for new evidence which consisted of medical records from a three-week hospitalization at Marymount Hospital and from another hospital stay at Veterans Administration Hospital. Id. at *2. He claimed deteriorating depression, dysthmic disorder, and a lumbar radiculopathy. Id. The court of appeals held that although the new evidence showed that claimant suffered from depression, it also demonstrated that the depression was "neither severe not continuous" and thus that it did not impact his ability to engage in substantial gainful activity. Id.

Here, like Johnson, supra, record (9) fails for lack of materiality and probative value because it does not provide evidence, i.e., test results, diagnosis, proof of new restrictions, which would have changed the Commissioner's decision. Rather, the evidence discusses facts that were already reviewed by the ALJ—that Wilson suffers from a personality disorder, suicidal ideation, and continuous physical pain. This repetition offers no new insight that could potentially change the ALJ's determination about Wilson's disability status. As such, Wilson's argument for remand lacks merit.

**V. Conclusion**

Based on the above, Wilson's motion for summary judgment is DENIED and the Commissioner's motion for summary judgment is GRANTED. The case is DISMISSED.

SO ORDERED.

          S/Avern Cohn
          AVERN COHN
          UNITED STATES DISTRICT JUDGE

Dated: July 1, 2011

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 1, 2011, by electronic and/or ordinary mail.

          S/Julie Owens
          Case Manager, (313) 234-5160